UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST. ROOM 4066**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

September 30, 2021

VIA ECF

**LETTER ORDER**

Re:   John Doe v. The Roman Catholic Archdiocese of Newark, et al.
      Civil Action No. 20-13623

Dear Litigants:

Before the Court is Defendants The Roman Catholic Diocese of Metuchen's ("Diocese") and The Roman Catholic Archdiocese of Newark's ("Archdiocese" and together with the Diocese, the "Church Defendants") Motions for Judgment on the Pleadings or, in the Alternative, to Strike Portions of the Complaint. ECF Nos. 33, 38. Plaintiff John Doe ("Plaintiff") opposes the Motions. ECF No. 47. For the reasons explained below, the Church Defendants' Motions are **DENIED**.

**I.   BACKGROUND**

This matter arises from Plaintiff's allegations of sexual abuse by Theodore E. McCarrick ("McCarrick"), a Bishop for the Diocese and Archbishop for the Archdiocese during the relevant time.

**A.   McCarrick's History as Bishop of Metuchen and Archbishop of Newark**

The following facts are alleged in the Complaint, ECF No. 1 ("Compl.").

In 1958, McCarrick was ordained as a priest by the Archdiocese of New York, Compl. ¶ 34, and he held numerous religious assignments for his first twenty-five years as a cleric. See generally id. ¶¶ 35-36, 38, 44-46. Around 1980 or 1981, several Catholic Church officials considered various candidates, including McCarrick, for the Bishop of Metuchen position. Id. ¶ 53. Despite alleged knowledge of McCarrick's history of sexual abuse of young men and propensity to sexually abuse minor boys, the Diocese appointed McCarrick as Bishop in 1981. Id. ¶¶ 58-60.

In 1984, McCarrick purchased a beach house in Sea Girt, New Jersey, on behalf of the Diocese and pursuant to his spending authority as Bishop. Id. ¶ 67. The Complaint alleges that McCarrick used the beach house for sexual encounters with minor boys, seminarians, and young men, all with the knowledge of the Diocese, Archdiocese, and other Catholic Church officials. Id. ¶¶ 68-70. Around 1985 or 1986, a mother of several children delivered a letter to every Roman

Catholic cardinal in the United States accusing McCarrick of sexually abusing minors. Id. ¶¶ 71-72.

McCarrick was appointed Archbishop of the Newark Archdiocese in 1986, a position he held until 2000. Id. ¶ 91. He lived in a private residence at the Cathedral Basilica of the Sacred Heart in Newark. Id. ¶ 136. Throughout his tenure as both Bishop and Archbishop, McCarrick wielded exclusive authority over the business and spiritual affairs of each diocese, including the power to investigate and punish clerics known to have engaged in sexual abuse or misconduct. See, e.g., id. ¶¶ 225, 271-73.

### B. McCarrick's History with Plaintiff

Plaintiff and his siblings were raised in a Roman Catholic family in New York. Id. ¶ 122. McCarrick was a close friend of Plaintiff's family from the time Plaintiff was a young child. Id. ¶ 121. The Complaint alleges that beginning in 1985, when Plaintiff was twelve years old, Plaintiff's parents often surrendered temporary custody of Plaintiff to McCarrick for overnight stays. Id. ¶¶ 127-29. In 1985, while McCarrick was Bishop of Metuchen, Plaintiff stayed with McCarrick at the Metuchen Rectory. Id. ¶ 129. The following day, Plaintiff alleges, McCarrick took him to the Diocesan Sea Girt beach house and sexually abused him for the first time. Id. ¶¶ 129-130.

The Complaint alleges that from 1985 to 1988, McCarrick sexually abused Plaintiff at the beach house approximately nine times, at the Metuchen Rectory approximately three times, and at the Eldred Preserve in the Catskills more than fifty times on weekend trips.[1] Id. ¶¶ 131-35. Once elevated to Archbishop of Newark, McCarrick allegedly sexually abused and anally raped Plaintiff approximately eight times at McCarrick's residence at the Cathedral Basilica of the Sacred Heart, where Plaintiff and his family were occasional congregants.[2] Id. ¶¶ 136-37. On one occasion, the Complaint alleges, McCarrick raped Plaintiff and then called another priest into his apartment who also sexually abused and raped Plaintiff. Id. ¶¶ 140-41.

The Complaint also alleges that in 1990, while Archbishop of Newark, McCarrick sexually abused Plaintiff during an overnight visit in New York City for a Knights of Columbus dinner, as well as over the course of five nights at a hotel in Ireland during a Catholic Church fundraising trip. Id. ¶¶ 147-50. Plaintiff alleges that Archdiocese officials who received McCarrick's expense reports from the Ireland visit should have known that McCarrick consciously decided to share a room and bed with Plaintiff during that visit. Id. ¶ 151.

Plaintiff alleges that McCarrick had access to him through the Church Defendants' facilities and programs and thus as a "minor child, parishioner, congregant, student, overnight (and day) visitor, and participant in church activities," he was subjected to the ongoing influence of the Church Defendants. Id. ¶¶ 163, 177-78. As a result of McCarrick's continued abuse, Plaintiff's

---

[1] Plaintiff does not allege that the Eldred Preserve was owned by the Church Defendants.

[2] At Plaintiff's deposition, he clarified that he attended an event or Mass only once at the Cathedral Basilica. See Certification of Christopher H. Westrick, Esq., Ex. A, ECF No. 39.1.

grades fell, he was kicked out of several high schools, and he suffers from depression, emotional distress, rage, and substance abuse. Id. ¶¶ 153-60.

### C. Procedural History

On September 30, 2020, Plaintiff filed a Complaint against McCarrick, the Diocese, and the Archdiocese, asserting claims for (1) sexual battery against McCarrick, Compl. ¶¶ 551-62 ("Count I"); (2) vicarious liability (respondeat superior) against the Diocese and Archdiocese for the acts of their agent, McCarrick, id. ¶¶ 563-621 ("Count II"); (3) negligence/gross negligence against the Archdiocese and Diocese, id. ¶¶ 622-47, 677-702 ("Count III" and "Count VI"); (4) negligent supervision and training against the Archdiocese and Diocese, id. ¶¶ 648-62, 703-17 ("Count IV" and "Count VII"); and (5) negligent retention against the Archdiocese and Diocese, id. ¶¶ 663-76, 718-31 ("Count V" and "Count VIII"). The Diocese and Archdiocese each answered the Complaint in December 2020, ECF Nos. 12, 16, and now move for judgment on the pleadings or, alternatively, to strike portions of the Complaint. ECF Nos. 33, 38.

## II.  LEGAL STANDARD

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is warranted if "there are no material issues of fact" and the movant "is entitled to judgment as a matter of law." Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017) (citation omitted). The Court "must accept all of the allegations in the pleadings of the [non-moving party] as true and draw all reasonable inferences in favor of the non-moving party." Id. at 417-18. The Court assesses a Rule 12(c) motion "under the same standards that apply to a Rule 12(b)(6) motion" to dismiss. Id. at 417 (citation omitted).

In considering a motion to dismiss under Rule 12(b)(6), the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III.  ANALYSIS

The Church Defendants move for judgment on the pleadings, arguing that the Complaint fails to state a claim upon which relief can be granted. The Church Defendants first contend that Plaintiff has not plausibly alleged an in loco parentis relationship between Plaintiff and the Church Defendants and that without such a relationship, Plaintiff's claims are time barred. Next, the Church Defendants maintain that Plaintiff's claims fail on the merits because McCarrick was acting outside the scope of his employment, and the Church Defendants are not liable for the criminal acts of their employees. Additionally, in the alternative, the Church Defendants seek to strike allegedly immaterial and impertinent information from the Complaint. The Court addresses each argument in turn.

### A. The Child Victims Act and Extended Statute of Limitations

The Church Defendants argue that Plaintiff's claims, which accrued decades ago, are time barred. They contend that while New Jersey's Child Sexual Abuse Act ("CSAA") provides for an

extended statute of limitations in certain cases, Plaintiff must establish an in loco parentis relationship between Plaintiff and the Church Defendants to avail himself of the CSAA.³ In opposition, Plaintiff clarifies that he does not assert any claim under the CSAA, but rather seeks to invoke the extended statute of limitations permitted by the Child Victim's Act ("CVA"), which applies to a wide variety of claims without the need to demonstrate an in loco parentis relationship. The Court agrees with Plaintiff.

In 2019, the New Jersey Legislature extended the statute of limitations for child sexual assault claims and additionally revived expired civil claims for victims of childhood sexual abuse in New Jersey for a two-year period. N.J.S.A. §§ 2A:14-2a, 14-2b. The CVA provides, in relevant part, that

> [e]very action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act . . . or sexual abuse as defined in [the CSAA] against a minor under the age of 18 . . . shall be commenced within 37 years after the minor reaches the age of majority, or within seven years from the date of reasonable discovery of the injury and its causal relationship to the act, whichever date is later.

N.J.S.A. § 2A:14-2a. The CVA also states that

> an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act . . . or sexual abuse . . . that occurred prior to [December 1, 2019], and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following [December 1, 2019].

Id. § 2A:14-2b.

By its plain language, the CVA's extended statute of limitations applies not just to claims brought under the CSAA, but also to all state law claims arising from injuries caused by sexual assault, including Plaintiff's instant claims for negligence and vicarious liability against the Church Defendants. See Gavin v. Bd. of Educ., S. Orange-Maplewood Sch. Dist., No. 20-9191, 2021 WL 1050364, at *5 (D.N.J. Mar. 18, 2021) (holding that the CVA's enhanced limitations period applied to the plaintiff's common-law claim for negligent supervision against a school board arising from abuse a teacher inflicted on him as a minor). As Plaintiff does not assert a claim under the CSAA, the Court need not consider whether he has adequately pled an in loco parentis relationship. His instant claims for negligence and vicarious liability against the Church Defendants fall comfortably within the broad language of the CVA.

Consequently, the Complaint is not time barred. The Court must therefore proceed to the Church Defendant's substantive attacks on the merits of Plaintiff's claims.

---

³ The CSAA imposes liability for "sexual abuse," and includes "a parent, resource family parent, guardian or other person standing in loco parentis who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse." N.J.S.A § 2A:61B-1(a)(1).

4

### B. Vicarious Liability

The Church Defendants next argue that the Complaint must be dismissed in full because McCarrick was acting outside the scope of his employment and, therefore, the Church Defendants cannot be vicariously liable for his sexual assaults against Plaintiff. The Church Defendants also argue that they cannot be liable for the criminal actions of their employee, McCarrick.

"[T]he doctrine of respondeat superior recognizes a vicarious liability principle pursuant to which a master will be held liable in certain cases for the wrongful acts of his servants or employees." Carter v. Reynolds, 175 N.J. 402, 408 (2003) (citation omitted). "The imposition of vicarious liability upon employers for the acts of an employee . . . is based upon the idea that the employee is the agent or, 'arm' of the employer." G.A.-H. v. K.G.G., 238 N.J. 401, 415 (2019) (citing Davis v. Devereux Found., 209 N.J. 269, 287 (2012)). "To establish a master's liability for the acts of his servant, a plaintiff must prove (1) that a master-servant relationship existed and (2) that the tortious act of the servant occurred within the scope of that employment." Carter, 175 N.J. at 409.

However, the Restatement (Second) of Agency, § 219 ("Section 219"), recognizes exceptions to the rule that a tortious act must occur within the scope of employment:

> (1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.
>
> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> > (a) the master intended the conduct or the consequences, or
> >
> > (b) the master was negligent or reckless, or
> >
> > (c) the conduct violated a non-delegable duty of the master, or
> >
> > (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

Plaintiff argues that Section 219(2)(d) applies to his claims for vicarious liability because McCarrick was aided in accomplishing his intentional torts of sexual battery against Plaintiff by the existence of the agency relationship. Compl. ¶¶ 590, 594.

Generally, the New Jersey Supreme Court applies Section 219(2) agency principles under select circumstances[4] in "a discrete effort to realize and effectuate the policies giving rise to those

---

[4] For example, the New Jersey Supreme Court applies Section 219(2) to New Jersey Law Against Discrimination hostile work environment claims and New Jersey Conscientious Employee Protection Act claims. See Lehmann v. Toys 'R' Us, 132 N.J. 587 (1993); Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405 (1994).

statutory schemes rather than an endorsement of applying § 219(2)(d) to all respondeat superior situations." Siemens Bldg. Techs., Inc. v. PNC Fin. Servs. Grp., Inc., 226 F. App'x 192, 198 (3d Cir. 2007). However, in Hardwicke v. Am. Boychoir Sch., the New Jersey Supreme Court chose to apply the above section "to claims predicated on facts indicating child abuse." 188 N.J. 69, 102 (2006). It noted that "the CSAA recognizes the vulnerability of children and demonstrates a legislative intent to protect them from victimization," and thus "common-law claims based on child abuse are supported by the same compelling rationale." Id. Given the policy rationales articulated in Hardwicke—and further embodied by the New Jersey Legislature's broad expansion of the statute of limitations through the CVA—this Court presumes that the New Jersey Supreme Court would apply Section 219(2) to all claims arising from sexual assault or abuse of a minor, rather than only those arising under the CSAA.

The New Jersey Supreme Court has explained "that an employer could be held vicariously liable under [Section 219(2)(d)] even when the employee was acting outside the scope of his or her employment" if four predicates are satisfied:

> (1) the employer gave the authority to the supervisor to control the situation about which the plaintiff complains; (2) the supervisor exercised that authority; (3) the exercise of authority resulted in a violation of the LAD; and (4) the authority delegated by the employer to the supervisor aided the supervisor in injuring the plaintiff.

Hardwicke, 188 N.J. at 101-02 (quoting Lehmann, 132 N.J. at 620). Stated differently, "for an employee to be aided by his employment in committing a wrongful act, he must have taken advantage of some special mechanism afforded to him by his employment" or "the employment must have provided the employee a position of special authority making the victim particularly vulnerable to the wrongful act." Yucis v. Sears Outlet Stores, LLC, 813 F. App'x 780, 786 (3d Cir. 2020).

In this case, the Court finds that Plaintiff sufficiently pled that McCarrick was in a position of special authority to make Plaintiff a victim, such that the Court will not dismiss the vicarious liability claim at this early stage. The Complaint alleges numerous Catholic Church policies surrounding the authoritative role of bishops and archbishops and the regulatory framework for reporting sexual abuse and any ensuing investigations. See, e.g., Compl. ¶¶ 267-68. While McCarrick knew Plaintiff before his roles as Bishop and Archbishop for the Church Defendants, Plaintiff alleges that the sexual misconduct did not begin until McCarrick assumed those roles. Id. ¶¶ 121, 129. The Complaint further alleges that as Bishop, McCarrick was the only authority during the relevant times who could trigger an investigation into sexual abuse of a minor, and that McCarrick frequently reminded Plaintiff that in his role as Bishop, he was directly in charge of the Church and the only person capable of addressing his own misconduct. Id. ¶¶ 271, 576, 585-89.

Given the Complaint's well-pled allegations that McCarrick used his position in the Church to carry out assaults during his tenure with the Church Defendants, the Court finds that Plaintiff has adequately stated a claim for vicarious liability. The Motions are denied as to Count II.

6

### C. Negligence Claims

Plaintiff's remaining causes of action against the Church Defendants assert negligence or gross negligence, negligent supervision and training, and negligent retention.[5] The Church Defendants argue that they did not owe a duty to Plaintiff, and thus they cannot be liable under any negligence theory. The Court disagrees.

"To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). "Negligence differs from gross negligence only in degree, not in kind." W.H. v. R.C., No. 19-13538, 2020 WL 1041390, at *6 (D.N.J. Mar. 4, 2020) (quoting Monaghan v. Holy Trinity Church, 275 N.J. Super. 594, 599 (App. Div. 1994)). Plaintiff must therefore meet the same elements to establish either claim.

"Courts consider several factors when determining whether a duty of care is owed: fairness and public policy; foreseeability; the relationship between the parties; the nature of the conduct at issue; 'and the ability to alter behavior to avoid injury to another.'" G.A.-H, 238 N.J. at 414 (quoting Robinson v. Vivirito, 217 N.J. 199, 208 (2014)). "'Foreseeability of the risk of harm is the foundational element in the determination of whether a duty exists,' but 'the determination of the existence of a duty is [ultimately] a question of fairness and public policy.'" Id. (quoting J.S. v. R.T.H., 155 N.J. 330, 337, 339 (1998)).

In addition, New Jersey courts "expressly recognize the tort of negligent hiring or retention of an incompetent, unfit or dangerous employee and hold that one may be liable for injuries to third persons proximately caused by such negligence." Di Cosala v. Kay, 91 N.J. 159, 174 (1982). Here too, the foreseeability of harm plays an integral role: Plaintiff must allege that the employer (a) "kn[ew] of its employee's . . . dangerous attributes when it . . . retain[ed] its employee;" and (b) "should have reasonably foreseen the likelihood that the employee through his employment would come into contact with members of the public, such as the plaintiff, under circumstances that would create a risk of danger to such persons because of the employee's qualities." Id. at 177.[6]

Drawing all reasonable inferences in favor of Plaintiff, the Complaint adequately alleges that the Church Defendants owed Plaintiff a duty of care. Plaintiff's claims for negligence assert that (a) the Church Defendants owed a duty to protect Plaintiff from foreseeable harm as a "vulnerable child participating in the programs and activities" offered by the Church Defendants to minors, see, e.g., Compl. ¶¶ 163, 177-78, and as a minor visiting the Church Defendants' properties, including the Sea Girt beach house, the Metuchen rectory, and the Cathedral Basilica, see id. ¶¶ 637, 694, (b) the Church Defendants breached that duty by granting McCarrick access to children through his position as Bishop and Archbishop and by failing to supervise and

---

[5] Given the significant factual and legal overlap pleaded for these respective claims, the Court considers all negligence claims together.

[6] The same analysis applies to Plaintiff's claim for negligent supervision. See, e.g., Doe 3 v. Bd. of Educ. of Vocational-Tech. Sch. Dist. in Cnty. of Gloucester, No. 17-13793, 2018 WL 3218692, at *3 (D.N.J. July 2, 2018).

negligently retaining McCarrick despite being on notice of his propensity to sexually abuse minors, id. ¶¶ 58, 667-68, 723-26; and (c) this breach caused Plaintiff to be abused and suffer severe harm, id. ¶ 160.

To establish the foreseeability of this harm, Plaintiff points to both the Church Defendants' general policies and facts specific to McCarrick. For example, the Complaint contains allegations that the Catholic Church and Church Defendants were aware of general incidents of abuse within the Catholic Church and operated under a general policy of concealment. See, e.g., id. ¶¶ 59, 269-70. Plaintiff also alleges that the Church Defendants were aware of McCarrick's propensity for sexual misconduct against minor boys when it retained and supervised him. See, e.g., id. ¶¶ 58, 66. These facts support the inference that the Church Defendants should have reasonably foreseen that, through his employment, McCarrick would have access to members of the public and participants in church programs—like Plaintiff—under circumstances that would create a risk of danger to Plaintiff because of McCarrick's qualities.

Therefore, the Court finds Plaintiff has adequately stated claims for negligence. Counts III to VIII may proceed against the Church Defendants.

### D. Motion to Strike

The Church Defendants last argue that the Court should strike allegations from the Complaint related to immaterial and impertinent information regarding the church's history, McCarrick's personal history, church law, McCarrick's actions against third parties, and unrelated events that occurred decades after Plaintiff's abuse stopped. They argue that the interest of justice demands the Court to relax the deadline for filing a motion to strike because it will save judicial resources and it will prevent the dioceses from being prejudiced. The Court disagrees.

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The court may act "on its own" or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). "Because of the drastic nature of the remedy, however, motions to strike are usually 'viewed with disfavor' and will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (quoting Tonka Corp. v. Rose Art Indus., Inc., 836 F. Supp. 200, 217 (D.N.J. 1993)).

The Court finds that the Church Defendants' motions to strike are untimely. As motions to strike are viewed with disfavor, and because the Court finds there is no prejudice to the Church Defendants, the Court will not act sua sponte to strike any portions of the Complaint.

### IV.  CONCLUSION

For the reasons stated above, the Church Defendants' Motions for Judgment on the Pleadings or, in the alternative, to Strike Portions of the Complaint, ECF Nos. 33, 38, are **DENIED**.

8

SO ORDERED.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
UNITED STATES DISTRICT JUDGE